Go ahead and call our first case, United States v. Bentley. May it please the court, my name is Daniel J. Terrell with the law firm of Chiesa, Shahinian, and Jean Tomasi, P.C. Appearing as pro bono counsel on behalf of the appellant in this case, Mr. Jeffrey Bentley. Thanks. Before you proceed, and lest I forget, our gratitude, sir, for you and your firm for taking on this assignment, which you've fulfilled very well. Thank you, Your Honor. Please proceed. And if I may, I respectfully request just three minutes for purposes of rebuttal. Done. Thank you. Your Honor, the district court erred in denying Mr. Bentley's motion pursuant to Section 2255 for three specific reasons. First, Mr. Bentley has conclusively established that his Acahan sentence in this case was based on the residual clause of the Armed Career Criminal Act, and that is therefore illegal after the Supreme Court's decision in Johnson v. United States. In this case, Mr. Bentley entered into a plea agreement that specifically identified the three predicates that were being used to justify his Acahan sentence. Did the PSR put him on notice of all the past crimes that might be used as predicates? The PSR did list what his prior convictions were, but given the fact that the plea agreement in this case specifically identified those that were being used to justify the Acahan enhancement, Mr. Bentley had no reason to believe that any of those alternative convictions that were listed in the PSR were those that were going to be used to justify the enhancement, Your Honor. Is there anything in the statute that says it's only what's listed in the plea agreement that you might be facing an Acahan enhancement for? There's nothing in the statute that lists that, Your Honor, but based upon the fact that this was an agreement that was negotiated at arm's length between the government and Mr. Bentley's counsel at the time. Is there anything in the plea agreement, Mr. Terrell, that says, and these are the only things that you could possibly face an enhancement for? There's not something specifically limiting it to the specific convictions, but there would be no reason for the government and Mr. Bentley's counsel in this matter to list these convictions in the plea agreement if those were not going to be the ones that were specifically going to be used to justify the enhancement for Mr. Bentley. Well, if that's the case, isn't this closer to the Seventh Circuit's Dotson case than it is to the Fourth Circuit's Hodge case? Well, it's true, Your Honor, that in Dotson, the Seventh Circuit did permit the substitution of alternative conviction for the first time on collateral review. But the Seventh Circuit specifically noted that the reasons for doing so were narrow and limited to the specific facts of that case. And the specific facts included that those previous convictions were in the PSR, right? Well, Your Honor, the Seventh Circuit based its decision on Dotson in the fact that the specific conviction that was subsequently allowed to be substituted for the first time on collateral review, in that case I believe it was an Indiana burglary conviction, had been listed in the PSR, but more specifically had been listed in the indictment. Therefore, the Seventh Circuit reasoned in that case that the defendant had notice of the fact from the very beginning of the case at the indictment stage as opposed to at his sentencing stage with the inclusion of it in the PSR. The other factor, Your Honor, with respect to Dotson that the District Court, or excuse me, that the Seventh Circuit relied upon was the fact that the defendant himself on multiple submissions to the court had indicated his own belief, which the Seventh Circuit described as mistaken, because it was, in that the substituted conviction was actually used at his original sentencing to justify the enhancement. Therefore, he couldn't later claim that he lacked knowledge or lacked notice with respect to that particular conviction later on. Can your client claim a lack of notice or understanding about the various crimes in his background that could have subjected him to an ACCA enhancement? Well, I think that he couldn't claim a lack of notice with respect to the existence of those convictions, but given the fact that the three convictions that were listed in the plea agreement were specifically identified as those that were going to be used to justify the enhancement. It's a due process argument you're making, right? Correct, Your Honor. Okay. And the thing that we're concerned about is that people know and be aware of the fact that you're subject to enhancement because you have these things in your background. If he knows he has those things in his background, where is the due process violation? That's what I'm trying to suss out in everything I'm asking. If that's the claim, that it's just not fair because I didn't know, and he did know, and we know he knew, then where's the unfairness? Is it the timing? Is it the fact that, is it the assertion that he didn't know he had these six North Carolina burglary convictions before they told him it in the PSR? It was a surprise to him. Is that the argument? Well, the surprise comes from the fact of potentially using those convictions 15 years later after there had been a plea agreement in place that specifically noted the convictions that were going to be used to justify his act-enhanced sentence. We said in Ketchum that the sentencing court isn't limited to the stipulations in the plea agreement but can look at other relevant information. Why doesn't that control this question? That's a good question, Judge Porter. And I think the answer to that is that there was an agreement in place that was here between the government and Mr. Bentley, that the government should be held to the agreement which it itself negotiated, and it itself included those specific convictions that were used to justify the enhancement. Mr. Bentley, in this case, now 15- Couldn't they have made that same argument in Ketchum? Or stipulations made in a plea agreement? But nevertheless, we said the sentencing court can look to other relevant information. Of course, a PSR would be other relevant information. But, yes, and they could look to the PSR for other convictions. But in doing so, it prejudiced a defendant such as Mr. Bentley in this case, particularly in the sense that he did not have noticed that those other convictions were going to be used. He had no reason to believe that those convictions were going to be used, based upon the existence of the plea agreement in this case. But at the same time, I mean, if we want to talk about surprise, I mean, one of the reasons that the government entered and probably, I'm assuming, listed those agreements is because it was before Johnson, and there wasn't a problem with using those as predicates at that point in time. So there's been a change. And it seems that I doubt that the government would have listed those same three predicates post-Johnson. And so now there's been a change. That change benefits people like your client in many ways, because certain items that used to be predicates are not. But it seems that if we want to look at maybe the harmless error standard of review, we have to look at, okay, we have a change in terms of how we're going to read this statute. And now afterwards, the government says items that were in the PSR, that I don't think your client objected to, we would like to now count as we begin to sort out the pieces post-Johnson. Why is that a due process or other problem that would merit relief for your client? Well, Your Honor, I believe that there's a distinction between objecting to the existence or the inclusion of specific convictions listed in the criminal history section of a PSR and objecting to the use of those convictions to be used to justify an ACCA-enhanced sentence. With respect to, Your Honor mentioned a harmless error standard, which the government also lists in their or describes in their opposition to our brief. In this instance, Peppers, in that case, there was no plea agreement. The plea agreement was entirely silent as to which convictions were going to be used to justify Peppers' ACCA enhancement. In essence, Peppers took the risk that any of the convictions that were identified in the PSR or in that instance in the information could be used to justify an ACCA enhancement. So your argument is that by listing those three in the plea agreement, that was it. The government was locked in, and that changes the standard of review? Well, Your Honor, it doesn't change the standard of review. So we're on harmless error review? It may be appropriate to apply that standard, Your Honor, but given the situations of this case, allowing the government to substitute convictions for the first time on collateral review wasn't harmless in Mr. Bentley's case. We let the government substitute predicates in Peppers, right? I mean, we didn't discuss it. It wasn't part of the analysis because, you know, memory serves, it wasn't really teed up. But we had them, we sent it back specifically to see whether there were other ACCA predicates. Why would we have done that if we thought it was a due process violation? Well, in Peppers, Your Honor, the court did send it back to the district court to determine what it described as in the first instance as to whether or not he had other convictions which would qualify him for an ACCA enhanced sentence. In this case, the district court has already made that determination. It's a substantially different situation where the government has already been allowed substitution, not pursuant to a remand order based from this court. You're running a little short on time. Let's assume for just the sake of discussion we thought there could be a substitution. Did the North Carolina, well, let me start with this. If we thought the North Carolina robberies qualified as ACCA predicates, would we ever have to look at the Virginia ones, the Virginia priors of your client? Your Honor, I would suggest that you would because the Virginia convictions were the ones that were specifically identified in the plea agreement and the government should be held to the specific convictions that it specifically listed in the plea agreement. If we've gotten past that point by saying there could be substitution, what does it matter? Well, it matters because it would result in harm to defendants such as Mr. Bentley in his case, and that the error would not be harmless. And it's harmless really in three ways, Your Honor. First, as I mentioned before, Mr. Bentley didn't receive the benefit of his bargain, namely that the three convictions that were specifically listed in his plea agreement were those that were going to be used to justify his ACCA enhanced sentence. Second, he was prejudiced by the fact that despite none of those convictions that were listed in his plea agreement, here we're talking about a substantial difference. We're talking about a 10-year maximum on a plea to count one of the indictment under 922 G1 compared to a 15-year minimum sentence which he's been given and which he's already served in this case. Okay. I'm puzzled by the assertion that that error is not harmless. You've just said they should be held to the deal they struck. He struck a deal in which he knew he was going to face that minimum, that 15 mandatory minimum. Aren't you arguing for a windfall based on the Supreme Court's decision in Johnson when the Supreme Court decides to change the law and there shouldn't be a holding of everybody to their understanding? There should, in fact, be a special, now, windfall for your client? Well, like there has been in this instance, if there is a beneficial benefit that comes from a Supreme Court's decision determining that a sentence such as his is illegal, then certainly we would argue that he should be entitled to benefit from that error. That's the whole question. Is the sentence illegal? If you substitute ACCA predicates, it's not illegal, unless you're arguing that the North Carolina burglars don't qualify. Well, we did argue that in our papers, Your Honor, and we think that based upon the record that was before the district court, the district court cannot make a proper determination as to whether or not, based upon the documents that have been submitted by the government. That's a clear error standard about that, right? Correct, Your Honor. Gotcha. And finally, with respect to the prejudice aspect that we were discussing, in this instance, Mr. Bentley is now forced 15, 16 years later, after initially being sentenced, to essentially establish the fact that he doesn't have these convictions for purposes of an act enhancement, with respect to the North Carolina convictions. He's in a much more difficult position now, 16 years later, attempting to find documents or witnesses that can demonstrate the inappropriateness of using those convictions for the first time on collateral review. All right. Anything else, Judge Reborder? Judge Phipps, anything else? No, nothing. Thank you. Okay. Thanks very much, Mr. Trell. We'll have you back on rebuttal. Thank you, Your Honor. May I proceed? May it please the Court, Alexander Ebrahim for the appellee of the United States. This Court should affirm the ruling of the District Court for two principal reasons. First, the District Court correctly concluded that Mr. Bentley's six prior North Carolina breaking and entering convictions,   but were part of a plea to the District Court. were still attributable to him under the ACCA. And second, the District Court's conclusions that those prior breaking and entering convictions were, in fact, for a violation of North Carolina felonious breaking and entering, and that that crime categorically qualifies under the Enumerated Offenses Clause, both of those conclusions were also correct. Why don't you go straight to Hodge, if you would, Mr. Ebrahim. Sure, Your Honor. Was the Fourth Circuit really just wrong as a matter of law, or is the case just distinguishable? Well, both, Your Honor. I think the biggest issue with Hodge is in the broad strokes that it paints, a potential waiver issue that exists on the facts of that case, whether a PSR that specifically excludes a conviction as an act of predicate. Well, it didn't exclude it. It listed some as act of predicates and put others in a bucket that, just in other buckets. I mean, it didn't expressly exclude it, right? I think the biggest issue in Hodge from the Fourth Circuit perspective, Your Honor, is that that second bucket actually said not act of predicates. It's the use of that word not, the intentional exclusion of a bucket that bothered the Fourth Circuit the most. And that, we don't have that here, Your Honor. And the other issue with Hodge is the broad strokes that it paints, that it creates now two issues going forward. The first is that, at a sentencing, the government now must list every single potential act of predicate, lest it forfeit that right. And what is the seriousness of that burden? You've got the criminal record of the defendant. You can just say, these are all the things that would subject you to a minimum 15-year sentence. You get three more lines of type. How is that a bad burden on the government? I think the biggest issue is what the Seventh Circuit points out in Dotson, Your Honor, and that is the potential to make sentencings prolonged affairs that use a lot of the resources, not just of the government, but of the defense and of the court in having to resolve ACCA objections to predicates that may never matter. And as the court said in Dotson, judicial resources warrant better investment. Is it in fact going to be the case, you think, that there will be, we're sitting here speculating, right, when the Seventh Circuit's speculating about that, are defendants actually going to say, I know I have, I know I've got 10 priors. I want to fight about all of them. Or are they just going to take their lumps because they've got a plea agreement, just the way we were dealing with here with Mr. Bentley? He knew what his criminal background was. I mean, I don't think it can credibly be argued he didn't know he'd been convicted six times in North Carolina. I think Peppers, actually, Your Honor, is a good example of what could happen. In that case, there were six potential priors that the parties were discussing, and ultimately they concluded that three met the ACCA. A case like Peppers now in the Fourth Circuit, Your Honor, you're discussing six potential priors, and you can agree on three, but you can't agree on the other three. So you actually do have to litigate all three of those in the Fourth Circuit. Otherwise, under Fourth Circuit, under Hodge, it's forfeited. I thought you just said that the turning point in Hodge was that they had listed some as not ACCA, which wasn't the case in Peppers. That's right, Your Honor, but the Fourth Circuit painted with broad strokes and has now held in Hodge that the government must list every single ACCA predicate at a sentencing or else it forfeits it. So that is the practical effect of Hodge, Your Honor. The other practical effect of Hodge is that it is now reopening a number of what were otherwise final convictions just to send them to a resentencing, even where they know that the ACCA will still apply. Well, Johnson did that. You know, go talk to the folks on First Street. You can't lay that at the Fourth Circuit's door. That's Johnson 2015, and we're dealing with it right now, and we don't have Hodge. So if there's a problem, it's a problem that the Supreme Court's decision in Johnson in 2015 created, but now circuits are having to deal with it. This is really, we didn't have it teed up in a specific way in Peppers. Would you agree that Peppers doesn't answer this question? This is coming before us for the first time with a point on it. I think, Your Honor, that Hodge is actually incompatible with Peppers because in Hodge, the Fourth Circuit has adopted a rule that as soon as you show that you have a conviction that relied on the residual clause, that's the end of the inquiry. You now get to go to resentencing. And my question to you is, do we have an open issue after Peppers? Does Peppers resolve this? Can you look at Peppers and say, well, that answered the question completely? Your Honor,  the situation at issue in Peppers, whether or not a prior drug conviction, which was not agreed upon by the parties at sentencing to be an act of predicate, was amenable to harmless error analysis, could otherwise support, that and other convictions could otherwise support an act of sentence on harmless error review. That is what this court told the district court to do in Peppers. It's hard to square that with a ruling like Hodge where Peppers could not exist in the Fourth Circuit right now, Your Honor, because under Hodge, you can't do that. You have to order a resentencing. So can I just, you know, just to get in on this, you know, the different circuits, it seems that the Seventh Circuit focused a lot of its analysis on efficiency, kind of conservation of judicial resources, whereas the Fourth Circuit focused its analysis on adequate notice. And the problem that a defendant has later on, you know, in a post Johnson world, many, many, many defendants tend to make the argument that, oh, hey, now we want to challenge some of these as predicates. And some of that might involve facts and witnesses that we don't have on hand quite the same way we did. And so it seems that we've got a nice at one level circuit split going between two different values, judicial efficiency and adequate notice. And even if we go with a harmless error standard, some of those notice concerns will always be there. And so it, so why, why should we disregard those notice concerns? It's not efficient. I mean, you can't, you can't, you know, you need to pick the fourth or the seventh. You can't say it's efficient to list everything. It's not, but you also can't say that someone has adequate notice when they aren't litigating the nuances of other predicates. So, so among that balance, why should we pick efficiency over adequate notice, especially in the criminal process context? Well, Your Honor, as my colleague mentioned when he spoke before the court, there are three, there are three different types of notice, two of which are waived by accepting a criminal conviction of a PSR. Whether you're the person who committed that conviction, what the content of that conviction is, the existence of the conviction. And then finally, whether that conviction can be used against you as an act of predicate. Those are the notice concerns. But those first two things are waived by accepting that criminal conviction in a PSR and not objecting to it. So the only thing not waived is whether that criminal conviction can be used against you to establish an act of predicate. And the government submits that that issue of notice can be resolved on collateral review. A criminal defendant has the right to object and to zealously oppose that exact issue, which is whether or not a prior conviction that you stipulated to is, in fact, an act of predicate. That right still exists on collateral review. Did that happen in this case? Could he have done that here? Absolutely, Your Honor. And at what point? At any point after the government was first ordered to respond. The government opposed, and Mr. Bentley didn't file a reply, but he could have, arguing that those North Carolina breaking and enterings did not qualify as predicates under the ACCA. The argument, as I understand it, is you chose to list certain things in the plea agreement. Nobody made you pick those. You could have picked the North Carolina ones. You picked the ones you picked. Those were the ones he was on notice of. That's what he was entitled to know about and to pay attention to, and that it's unfair and inappropriate, long after the fact, for you to pull other stuff in that you didn't agree to. Now, in that argument, where's the flaw in the reasoning? You control the plea agreement. It's not them. They don't decide. You decide which act of predicates you're going to choose. Why is it incorrect for them to say, just like Hodge, there's a notice issue here, and it rises to the level of due process? The flaw in that argument, at least on the facts here, Your Honor, is the issue that the PSR also exists, and the PSR increases the level of notice beyond what's written just in the plea agreement, and the plea agreement stipulates that the stipulations between the parties are not binding on the court, and, in fact, based on the plea agreement here, we see that the United States Probation Office didn't rely on the government's representations that the reckless endangerment qualified. In the ACCA section of the PSR, reckless endangerment doesn't appear as a predicate for Mr. Bentley. Now, the 11th Circuit in the tribute case goes even further, I think, than the 7th Circuit, and speaking of broad brushes, look, we don't care whether it's in the PSR or not. It's in the guy's past. It's in the past, and he's subject to it. Are you urging us to take that broad a step, or are you satisfied to go to the 7th Circuit, which seems to say if they're on some kind of notice like the PSR, then they can't complain? Where's the government want this fall to come to rest? Certainly, the government's position is that tribute is a reasonable outcome. The 11th Circuit, the 7th Circuit came out as a reasonable outcome. But, Your Honor, what's interesting about all these cases that we're talking about is they don't actually do a harmless error analysis. They do, they talk about waiver, they talk about forfeiture, but they don't actually necessarily engage in a traditional harmless error analysis under Brecht and its progeny. Are you saying we shouldn't engage in harmless error analysis? No, Your Honor, I apologize that I didn't finish that thought. What I'm suggesting is that this Court was right in Peppers, that a harmless error analysis is the correct way to go. The government urges this Court to stick with what it said in Peppers, to instruct district courts to apply a harmless error analysis. And as the inputs in the harmless error analysis, the district courts can factor in all the notice concerns that Judge Phipps brought up, and based on the individual facts of each case, and each case will be different. And what a PSR said in one case or plea agreement in another will all be different. And those all can feed into the district court's analysis of whether or not an error actually was harmless or not. Go ahead, Judge Phipps. So what would it take then for an error to be something other than harmless in your view? If there is a, for example, Your Honor, if there is a serious issue as to whether or not a conviction was actually committed by this defendant. For example, if at a original sentencing, there was a, there was an issue as to that fact, but the parties overlooked that because there were three other ACA convictions, but then that was to be substituted. That would be an issue that the court. So, so just to break that down, You identified three types of notice in this, in this case, and you said this one concerns only the third. Can you give me an instance where we would have only the third type of notice be in play and the error would be something other than harmless? I don't, I don't foresee that. It's always. So if the only notice deficiency is in the third category you identify, then the error would always be harmless, categorically harmless. It, it's hard to say for sure, Your Honor, but it's hard to foresee a situation where a notice concern as to the legality, right, that's a notice concern as to a legal conclusion would be something that could create an error that is not harmless. How about Hodge, where the government says not ACA?  Your Honor, that is actually a waiver concern. Well, isn't it, it's not just a waiver, isn't it, doesn't it then directly implicate what you said a moment ago, the notice functions, and therefore couldn't pass harmless error review. Yes, Your Honor, but, but underpinning that is the fact that the government, right, that the fourth circuit had an issue with the government taking an intentional act of exclusion, allowing a PSR to state, this is not an ACA predicate, not objecting to that and therefore forfeiting that argument and then allowing that same sentence, that same conviction to be used against a criminal defendant. Mr. Bentley didn't argue on direct review that the residual clauses unconstitutional, right? That's correct, Your Honor. And so should he have to show cause as well as prejudice? I don't think so, Your Honor. I haven't fully considered what, what Your Honor is saying, but given the, the, the Johnson, you know, that, that Johnson is a new rule of constitutional law that is applicable on collateral review. Mr. Bentley would be entitled to relief if he could meet his initial burden of showing that his conviction, in fact,  Four circuits have held. Otherwise that's not cause. Johnson is not cause. I understand, Your Honor. I, I had not yet. I had not considered that, but I'm happy to file a letter to the court. If the court would like me to, I noticed that I am out of time. Well, you're, it's all right. You're on our time for a minute here. I want to give you a chance to speak to the argument. Your colleague has made that the North Carolina predicates don't count. And in fact, it would, we would have to look at the Virginia predicates in any event. Your Honor, he has six North Carolina breaking and enterings. The government has established that those, in fact, categorically qualify as the enumerated offensive burglary under the ACA. That is not disputed here. That is not anywhere in the appellant's brief. Instead, he argues that as a factual matter, the court could not conclude that. First and foremost, Your Honor, that argument was waived below. So this court shouldn't even consider that argument. How was it waived? Because he didn't raise it on direct appeal? No, Your Honor, it was actually waived in the collateral review proceedings through multiple joint status requests asking for stays pending. Right. And I read that in your papers. When you're saying that joining in those, I guess your assertion is by agreeing to a stay, to see how things worked out, he necessarily was agreeing that he was convicted of those specific offenses. That that's implicit and there's nothing, and we have to accept that implication, right? Because there's nothing expressed in there. I wouldn't use the word agreeing, Your Honor. I would use the word asking. He was jointly asking along with the government. Yeah. He was jointly asking delayed because there might be a development in the law that's significant here. And you're taking it a step further, aren't you? Mr. Eberman saying in doing that, he necessarily said I was convicted of these things, but he never said those words. You're asking us to imply those words from to infer those words to say he implied those words. Your Honor, the words that the parties jointly used together in a October 22nd, 2018 joint status report was the issue is whether any of defendants prior six convictions for breaking and entering in North Carolina still qualify as violent felonies under the ACCA. That the government submits is pretty explicit, Your Honor, that parties are using the term whether any of those six convictions still qualifies violent felonies under the ACCA. And the reason they use that terminology is because in the Fourth Circuit at the time, the precedent was that they did qualify under the ACCA, but that was being. Your position has to be since waivers have to be expressed and unambiguous that there's no ambiguity in that at all. Yes, Your Honor. Yes, I got you. Thank you, Your Honor. Okay. Thank you, Your Honor. Just to respond briefly to some of the things that the government has stated, I would suggest that there is ambiguity with respect to what was included in the joint status reports. The government sought to, in the context of the Seventh Circuit's decision in Dotson, suggest that merely asking for an extension of time to see if there would be favorable changes in the law is tantamount to the submissions in Dotson where he suggested that knowledge of the fact that the particular conviction that was being used for the, that was subsequently substituted, was being used to justify a Zach enhancement. In this case, Mr. Bentley has never expressed anything different other than the fact that the convictions that were being used to justify a Zach enhancement were those that were specifically listed in the plea agreement. Would you respond to the question put to your colleague by Judge Porter about cause as well as prejudice, please? If you may remind me with respect to. Well, the argument is really forfeited. And so for us to entertain it, you have to show that there was cause to excuse the forfeiture plus prejudice. And so I guess the question is whether the fact that Johnson hadn't yet been decided constitutes sufficient cause to excuse the forfeiture or not. Well, I would submit that there was no forfeiture here and that we, that Mr. Bentley should be able to set forth that argument based. Well, there has to be a forfeiture, right? You didn't raise this on direct appeal because the law at that time didn't, you know, wasn't what the Supreme Court made it later. So you didn't make the argument. That's the definition of a forfeiture. The argument wasn't made. You now can make the argument. But when arguments are forfeited, we require a showing of cause and prejudice. So what's your cause? Is your statement that Johnson is the cause? Because if that's your position, that's fine. We just need to. Yes, Your Honor. And the fact that Johnson was made retroactive cases on collateral review in Welch, and that's the situation that's applicable here. Another thing that the government stated was its belief that the decision in that case was reasonable. We would suggest otherwise, and we would agree with Justice Martin's dissent in that case for two reasons, which he also identified. One, by allowing the government to ultimately substitute new convictions not identified in a plea agreement for the first time on collateral review and use those to justify an act enhancement essentially relieves the government of its initial burden at sentencing to prove the existence of those enhancing convictions. It shifts that burden inappropriately to the defendant, who is obligated to then show that he doesn't have these convictions. Well, what he does have the burden is to show that the sentencing court relied on the residual clause, right? Correct, Your Honor. And so if there's other information, like in a PSR that the sentencing court may have considered, how does that affect your burden to prove that the court relied on the residual clause? Well, in this instance, Mr. Bentley, I believe, did meet his burden of showing that the district court relied on the residual clause. How do we know that? How could we possibly know that? Well, given the fact that the specific convictions that were listed in the plea agreement, the first being reckless endangerment in first degree in Delaware, which the Supreme Court specifically stated in its decision in Borden, that crimes such as that that rely on a recklessness mens rea no longer qualify. How do we know the court didn't also look at the PSR and rely on that? He might've said to himself, I'm satisfied there's plenty of predicate convictions here. In addition to the ones that are stipulated in the plea agreement, there's a host over here in the PSR, so I'm good. He might not have said all that, but how do we know? It's your burden to prove that he did it. Well, our burden of proof from our position is that given the fact that these convictions were listed in the plea agreement, that it's reasonable to believe that the judge would rely upon and the sentencing court would rely upon those convictions, which were listed in the plea agreement, which was specifically drafted and those convictions were specifically chosen by the government. Okay. Anything else, Judge Borden? No. Judge Phipps? No, nothing. Thank you. Okay. Once again, thanks very much to you and your firm, Mr. Terrell. Appreciate it. And appreciate your argument for both counts. We've got the matter under advisement.